IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| OLYMPIA D. AMMONS, | :: | CIVIL ACTION NO. |
| BOP Reg. # 58126-019, | :: | 1:09-cv-2629-TCB |
|    Movant, | :: | |
| | :: | CRIMINAL ACTION NO. |
| v. | :: | 1:05-cr-316-TCB-3 |
| | :: | |
| UNITED STATES OF AMERICA, | :: | MOTION TO VACATE |
|    Respondent. | :: | 28 U.S.C. § 2255 |

**ORDER AND OPINION**

Movant Olympia D. Ammons challenges her plea agreement and the subsequent sixty-three-month term of imprisonment that she received in this Court in April 2008. Now before the Court are her 28 U.S.C. § 2255 motion to vacate her sentence [898], the government's response [913], and her reply [935].

**I.   Procedural History**

In April 2006, a federal grand jury returned a ninety-nine-count superseding indictment against twenty-one defendants [48], charging Ammons in thirteen of those counts. On October 2, 2006, Ammons signed a Guilty Plea and Plea Agreement [250-1] – pleading guilty to charges of conspiracy to commit bank fraud (Count 1) and bank fraud (Count 16) – and entered her guilty plea in open court. (See Plea Hr'g Tr. [445].) Ammons's plea agreement contains the following Limited Waiver of Appeal:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal her sentence and the right to collaterally attack her sentence in any post-conviction proceeding on any ground, except that the Defendant may file a direct appeal of any sentence imposed by the Court in excess of the applicable sentencing guideline range[,]. . . . [and] if the Government appeals the sentence imposed, the Defendant may also file a direct appeal of her sentence.

(Plea Agreement ¶ 12.) Ammons signed both the plea agreement and the following acknowledgment: "I . . . have discussed with my attorney the rights I may have to appeal or challenge my sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my sentence or challenging my sentence in any post-conviction proceeding for any reason whatsoever." (Id. ¶ 13.) She also acknowledged that no one had "threatened or forced [her] to plead guilty," or enticed her to do so with "promises or inducements." (Id.)

At Ammons's plea hearing, the Court questioned Ammons about her mental state and found that she had "been very alert and interactive" during the hearing and was free of any untoward influence, coercive or otherwise, that might have rendered her plea unknowing or involuntary. (Plea Hr'g Tr. at 5, 11-12, 26-27.) The Court also asked Ammons if she understood that she was "waiving [her] right both to file a direct appeal" and her "right to come back sometime in the future and attack the sentence,"

2

and if she understood "the difference between a direct appeal and a collateral attack," and Ammons acknowledged that she understood both. (Id. at 23-24.) When the Court asked Ammons's plea attorneys, Marger and Witt, whether they had discussed the appeal waiver with her, Marger replied that they had, and in doing so had "told her that one of the grounds that she could appeal on . . . is incompetence of counsel." (Id. at 24.)

On April 17, 2008, Ammons received a sixty-three-month sentence [641]. (See Sentencing Hr'g Tr. [706].) She filed a notice of appeal [658], which she later dismissed voluntarily [856]. She then filed a counseled § 2255 motion, raising three claims: (1) her guilty plea was unknowing and involuntary due to ineffective assistance of counsel – she did not understand the allegedly ambiguous and imprecise language in the "Limited Waiver of Appeal" contained in her plea agreement, and her plea counsel affirmatively misled her regarding the scope of that waiver; (2) one of her three trial attorneys provided ineffective assistance during her October 2007 proffer interview with the government, which ultimately denied her the benefit of a substantial assistance motion and a reduction in her sentence below the advisory sentencing guideline range; and (3) her sentencing attorneys were ineffective in failing to file a sentencing memorandum with the Court or to explain to the Court why she

3

deserved a reduced sentence under the factors set forth in 18 U.S.C. § 3553(a). (Mot. to Vacate at 3-17.)

## II. 28 U.S.C. § 2255 Review

A federal prisoner may file a motion to vacate her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It is well settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

## III. Discussion

### A. Ineffective Assistance: Ammons's Waiver of Her § 2255 Rights

#### 1. Motion to Vacate

Ammons first claims that her "waiver of her right to pursue a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 was not knowingly and voluntarily made due to the ineffective assistance of counsel." (Mot. at 3.) She asserts that trial counsel failed to explain to her "the nature and purpose" of a § 2255 motion, "the only postconviction proceeding available to her"; counsel misled her by implying

4

during her plea hearing that she could "challenge her lawyers' ineffectiveness at sentencing in a subsequent proceeding"; and this Court failed to make sure that she understood these matters before accepting her plea. (Id. at 3-4.) Ammons notes that the Limited Waiver of Appeal contained in her plea agreement does not specifically refer to § 2255, does not mention that a § 2255 "motion is generally the only [manner] in which a federal prisoner may challenge a federal conviction or . . . sentence on the basis that the laws or Constitution of the United States have been violated," and does not address her post-conviction waiver separately from her direct appeal waiver. Ammons blames this "imprecise drafting" for confusing the issue as to if, and when, she would be able to pursue post-conviction relief. (Mot. at 4-5.) Ammons also asserts that she first saw her plea agreement and appeal waiver on the day of her guilty plea and, therefore, lacked "adequate time to review" the waiver before signing it. (Id. at 6.) In sum, she argues that the ambiguous wording of the appeal waiver and counsel's "unchecked statement" at the plea hearing made her waiver of her right to file a § 2255 motion unknowing and involuntary. (Id. at 7.)

### 2. Government's Response

The government notes that the Limited Waiver of Appeal contained in Ammons's plea agreement provides that she "voluntarily and expressly waives . . . the

5

right to collaterally attack her sentence in any post-conviction proceeding on any ground," except in circumstances inapposite here, and also notes that Ammons explicitly acknowledged that she had "read the foregoing Plea Agreement and [had] carefully reviewed every part of it with [her] attorney." (Gov't Resp. at 4) (quoting Plea Agreement ¶¶ 12-13). The government contends that Marger correctly stated at the hearing that Ammons "retained the right to raise ineffective assistance of counsel" on appeal, and that she was not prejudiced by his "failure to distinguish between direct appeal and collateral attack." (Gov't Resp. at 6 n.1.)

The government acknowledges that, by entering into her plea agreement, Ammons did not waive this first § 2255 claim alleging counsel's ineffectiveness with respect to her appeal waiver. The government argues, however, that the claim fails on the merits because Ammons has not demonstrated prejudice arising from counsel's allegedly deficient performance. The government notes that, in exchange for her guilty plea, Ammons received the following:

> the dismissal of the count involving a mandatory sentence required to be imposed consecutive to other counts, the dismissal of all but two of the other counts, a protection from prosecution for her prior mortgage fraud and favorable sentencing recommendations regarding the mortgage fraud to which she did plead guilty at a time when she had already confessed to a series of frauds.

6

(Id. at 8-11.)

### 3. Ammons's Reply

Ammons replies that "the Court never asked her if she understood that the appeal waiver also included a motion under 28 U.S.C. § 2255 [and] whether she understood she could not come back in the future and attack her sentence." (Reply at 2.) She proclaims that she "does not seek to withdraw her guilty plea as the government implies," but seeks only to sever from her plea agreement the "unknowing and involuntary appeal waiver," which prejudiced her not because she otherwise would have insisted on going to trial – she would not have done so – but "because counsel's performance impacted upon the ultimate sentence she received." (Id. at 4.) By way of relief for her first claim, Ammons asks only that this Court disregard her collateral attack waiver and rule on the merits of her remaining two claims. (Id.)

### 4. Legal Framework and Analysis

A defendant does not procedurally default an ineffective-assistance-of-counsel claim by not raising it on direct appeal. Massaro v. United States, 538 U.S. 500, 508-09 (2003) (noting that it is preferable to raise that claim in § 2255 motion and that failure to raise it "on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"). The Supreme Court set forth the standard for

7

evaluating a claim of ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The analysis involves two components, but a court need not address both if the movant "makes an insufficient showing on one." <u>Id.</u> at 697. First, the court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." <u>Id.</u> at 690. The court should be "highly deferential" in scrutinizing counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. In other words, the movant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id.</u> (Internal quotations omitted). "Given the strong presumption in favor of competence, the [movant's] burden of persuasion–though the presumption is not insurmountable–is a heavy one." <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). Second, a federal habeas court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability," one "sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

8

The two-part <u>Strickland</u> test also applies in the context of a guilty plea, where, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>see also</u> <u>United States v. Broce</u>, 488 U.S. 563, 569 (1989) (stating that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary").

Furthermore, "[i]t is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily." <u>Williams v. United States</u>, 396 F.3d 1340, 1341 (11th Cir. 2005). "[F]or a sentence-appeal waiver to be enforceable, the government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." <u>Id.</u> (Internal quotations omitted). Moreover, "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes [a collateral attack upon] the sentence through a claim of ineffective assistance of counsel during sentencing." <u>Id.</u> at 1342. See also <u>United States v. White</u>, 307 F.3d 336, 343 (5th Cir.

9

2002) (following the "wealth of authority" in holding "that an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself"); United States v. Bushert, 997 F.2d 1343, 1350 n.17 (11th Cir. 1993) (noting that "[e]ven judicially enforced, knowing and voluntary sentence appeal waivers . . . would not prevent a collateral § 2255 action concerning certain subjects" – "such as a claim of ineffective assistance of counsel or involuntariness of waiver") (internal quotations omitted).

As noted above, during Ammons's plea hearing, the Court "specifically questioned" her about her appeal waiver, Williams, 396 F.3d at 1341, and Ammons acknowledged that she understood both the waiver and the difference between a direct appeal and a collateral attack on her sentence. (Plea Hr'g Tr. at 23-24.) She also acknowledged that she had not been coerced or improperly induced to enter into her plea agreement. (Id. at 11-12.) These "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings"). Moreover, notwithstanding Ammons's contentions in her § 2255 motion, her plea counsel did not

10

misrepresent the law by stating that, despite her appeal waiver, she could appeal "incompetence of counsel." See Bushert, 997 F.2d at 1350 n.17 (noting that appeal waiver does not foreclose claim of ineffective assistance of counsel with respect to waiver process itself). Accordingly, Ammons knowingly and voluntarily agreed to waive her right to appeal her sentence, and her first claim fails. See Williams, 396 F.3d at 1341.[1]

B.   **Ineffective Assistance: Ammons's Proffer Interview**

1.   **Motion to Vacate**

Ammons next claims that Witt, a real estate attorney and a member of her defense team, provided ineffective assistance with respect to her October 2007 proffer interview with the government when he failed to notify his co-counsel, Marger and Puglise, two criminal defense attorneys, about the interview both before and after it was held. (Mot. at 8.) Ammons argues that as a result of Witt's deficient performance during the interview, she "was purported to have minimized her own involvement in the crimes and stated that she did not know the builders involved in the case," causing the government to terminate the interview and to inform Witt that Ammons would not

---

[1] Moreover, as the ensuing discussion demonstrates, even if the Court were to grant Ammons the relief she seeks on her first claim, set aside her appeal waiver, and review her remaining two claims on the merits, those claims would fail.

11

be used as a witness at trial. (Id. at 9-10.) As a result, Ammons argues, she was prejudiced by the government's failure to file a § 5K1.1 substantial assistance motion seeking a downward sentencing departure on her behalf, and her resulting sentence was greatly disproportionate to the sentences of many of her co-defendants. Ammons acknowledges, however, that the Court did not assess the two-level sentencing enhancement that the probation officer had recommended she receive for using sophisticated means. (Id. at 11-12.) Ammons contends that Witt agreed at sentencing that his failure to contact his criminal defense colleagues about the proffer interview constituted deficient performance on his part. (Id. at 10-11; see Sentencing Hr'g Tr. at 10) (where Witt acknowledges that "the fault" for Ammons's insufficient proffer "lies with" him).

2.   **Government's Response**

The government responds that because Ammons knowingly and voluntarily entered into her plea agreement, she may not attack her sentence via a § 2255 motion based on a claim of ineffective assistance of post-plea counsel. (Resp. at 11.) The government also argues that Ammons's second claim fails on the merits because (1) she chose not to contact Witt's co-counsel both before and after the proffer interview, (2) she twice was given the opportunity to tell the truth during the

12

interview, before and after Witt asked for a recess "to try to convince her to tell the truth when she varied from what she previously had admitted," (3) she chose to ignore Witt's advice, and (4) Witt did not discourage her from involving her other two attorneys. (Id. at 12.) The government also notes that Ammons was not prejudiced because, despite the failure of her post-plea evidentiary proffer, she received a two-level sentencing guideline reduction, roughly equivalent to the § 5K1.1 reduction many of her co-defendants received; she was sentenced at the low end of the guideline range; and she received a reduction for acceptance of responsibility. (Id. at 12-13.)

3.   **Ammons's Reply**

Ammons replies that the government's description of the events of the proffer interview is incorrect, including its contention that Witt asked for a recess to encourage Ammons to tell the truth, when actually the recess was called because Ammons had begun to cry, and, upon resumption of the interview, Witt "encouraged her to proceed as she had been doing and told her she was doing fine." (Reply at 5-6.) Ammons argues that the government's assertion – that she was not prejudiced by Witt's performance because she received a two-level reduction anyway – is faulty because, without a request from the government for a downward departure, "there is no way to know whether the Court would accept the government's request for the two

level departure or depart further as it had done for at least one con-defendant." (Id. at 7.)

### 4.     Legal Framework and Analysis

As noted above, the Eleventh Circuit has concluded that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." Williams, 396 F.3d at 1342. The court reached that conclusion because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Id. In other words, the waiver of the right to challenge a sentence on any ground includes, but is not limited to, the waiver of the right to do so based on ineffective assistance of counsel at sentencing. See United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006) (noting that Eleventh Circuit has "consistently enforced knowing and voluntary appeal waivers according to their terms"). As this Court already has determined, Ammons knowingly and voluntarily waived "the right to appeal her sentence and the right to collaterally attack her sentence" (Plea Agreement at 7) – i.e., she did not do so

unknowingly or involuntarily due to the ineffective assistance of her plea counsel. That waiver precludes Ammons from attacking her sentence on the ground that she might have received a lighter sentence had her counsel not otherwise provided ineffective assistance after the entry of her plea, whether she received that assistance during her proffer interview or during her sentencing hearing. Accordingly, Ammons's second claim fails.[2]

## C.  Ineffective Assistance: Sentencing Factors

Ammons's third and final § 2255 ground for relief is that her sentencing counsel failed to file a memorandum arguing that she deserved a sentence reduction below the advisory sentencing guidelines minimum, based on the factors set forth in 18 U.S.C.

---

[2] Moreover, Ammons's second claim also fails on the merits. She has provided the Court with only speculation as to the sentence she might have received had the government accepted her October 2007 proffer, used her to testify at trial, and filed a substantial assistance motion on her behalf. The Court noted at sentencing that "the biggest thing driving [her] sentence is the amount of loss, because it's huge." (Sentencing Hr'g Tr. at 12.) The Court nevertheless declined to assess a two-level enhancement recommended by the probation officer and then sentenced Ammons at the low end of the resulting, reduced, advisory guidelines sentencing range. Speculation as to how much lower the Court might have gone if the government had filed a substantial assistance motion is an insufficient basis for granting Ammons § 2255 relief. See Boyd v. Allen, 592 F.3d 1274, 1308 (11th Cir. 2010) (agreeing with district court's conclusion that "speculative [claim] . . . would not provide the basis for habeas relief even if the claim were not barred by procedural default," and noting that petitioner "has not presented anything to establish that" claim has merit).

§ 3553(a). (Mot. at 12-13.) Ammons notes that trial counsel neither filed a memorandum nor argued the relevant factors at the sentencing hearing. (Id. at 14.) She argues that she "had a number of § 3553(a) factors that should have been brought to the Court's attention": (1) she had a long history of gainful employment, was a home owner, had a stable family with a small child, had pursued her bachelor's degree while under indictment and had received it with honors in May 2008, and was very active in her church, for the benefit of her community; (2) she had earned only $10,000 from her participation in the criminal scheme, much less than other participants, two of whom received twelve-month sentences; (3) she had no criminal history and lacked the inclination or ability to commit her crimes of conviction "without the direction of Mr. Wings," a co-conspirator; and (4) she had no "need for vocational or educational training or medical care." (Id. at 15-17.)

2.  **Government's Response**

Once again, the government argues that Ammons's valid plea agreement and sentence-appeal waiver require dismissal of this claim because Ammons waived all such claims of ineffective assistance of sentencing counsel. (Resp. at 11.) The government also argues that this claim fails on the merits because there is no

16

requirement that counsel file a written sentencing memorandum and because a formal pleading in this regard

> would have invited [a] government response which could have resulted in a much greater sentence than imposed. Indeed, Ammons had a history . . . [of] abusing her position of trust as a loan officer by committing mortgage fraud long before her over $7 million mortgage fraud in the present case, []as well as involvement in identity theft and signing for fraudulent lines of credit in the name of a phony business with fake income.

(Id. at 13.) The government notes that this Court "expressly considered all [§] 3553 factors as requested by defense counsel before imposing sentence."[3] (Id. at 14.)

### 3. Ammons's Reply

Ammons replies that the government misconstrues her argument as challenging counsel's failure to submit a sentencing memorandum, when she actually challenges counsel's failure "to raise any § 3553(a) factors at her sentencing," other than to suggest to the Court that it may want to consider "§ 3552 [sic]" and "consider going below the guidelines in this case." (Reply at 8-9) (quoting Sentencing Hr'g Tr. at 7-8).

---

[3] In sum, § 3553(a) requires the sentencing court to consider the applicable sentencing guidelines range in light of "the nature and circumstances of the offense and the history and characteristics of the defendant"; society's need to punish the defendant justly, including by avoiding unwarranted sentencing disparities among similar defendants, and its need to deter future crime; and the defendant's need for training or medical care. 18 U.S.C. § 3553(a).

**4. Analysis**

For the same reasons that Ammons's second claim fails, her third and final claim – directly challenging the performance of her counsel at sentencing – also fails.[4] See Williams, 396 F.3d at 1342. Her § 2255 motion is due to be denied in its entirety.

**IV. Certificate of Appealability**

A federal prisoner must obtain a certificate of appealability (COA) before appealing the denial of his motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). This Court "must issue or deny a certificate of appealability when it enters a final order adverse to" a § 2255 movant. Rule 11(a) of the Rules Governing Section 2255 Proceedings (also providing that "[i]f the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22").

A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when

---

[4] Moreover, like Ammons's second claim, her third claim also fails on the merits. Before pronouncing Ammons's sentence, the Court stated that it had taken into account the "idea of treating all the co-defendants the same based on their conduct," had "considered the factors set forth in" 18 U.S.C. § 3553(a), and had determined that "a sentence of 63 months takes into consideration the individual characteristics of Ms. Ammons" and also "reflects what a serious crime this is." (Sentencing Hr'g Tr. at 11-13.)

"reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." Lamarca v. Sec'y, Dep't of Corr., 568 F.3d 929, 934 (11th Cir. 2009) (citing Miller-El v. Cockrell, 537 U.S. 322, 337, 342 (2003)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, as here, a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Jimenez v. Quarterman, _ U.S. _, 129 S. Ct. 681, 684 n.3 (2009) (internal quotations omitted) (citing Slack, 529 U.S. at 484). Although Slack involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. See Jones v. United States, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying Slack standard in § 2255 case).

19

The Court finds that no claim Ammons has raised is debatable among jurists of reason or warrants encouragement to proceed further.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** Ammons's 28 U.S.C. § 2255 motion to vacate sentence [898], **DISMISSES** this action, and **DENIES** Ammons a certificate of appealability.

**IT IS SO ORDERED** this 30th day of September, 2010.

TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)